UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULA D. BROWN,<br><br>    Plaintiff,<br><br>        v.<br><br>U.S. ENVIRONMENTAL<br>PROTECTION AGENCY, et al.,<br><br>    Defendants. | Civil Action No. 04-0906 (JDB) |

## MEMORANDUM OPINION

This case arises out of a Freedom of Information Act ("FOIA") request by plaintiff Paula D. Brown, a special agent in the Office of the Inspector General of the U.S. Environmental Protection Agency, for a copy of the reports prepared by the Office of Inspector General in the course of an investigation into allegations that she had committed perjury in a criminal proceeding. The defendant agencies redacted from the reports the names of federal employee witnesses and informants to protect their personal privacy under Exemption 7(C) of FOIA. The parties have now filed cross-dispositive motions on the issue of whether these names were properly redacted. For the reasons stated below, the Court concludes that the redactions were lawful under Exemption 7(C), and will therefore grant defendants' motion to dismiss and deny plaintiff's motion for summary judgment.

## BACKGROUND

During the period relevant here, plaintiff was a Special Agent in the Criminal Investigation Division of the Office of Enforcement and Compliance Assurance at the U.S.

-1-

Environmental Protection Agency. On or about January 11, 2001, another employee in that office reported to the Department of Justice that she had learned that plaintiff had admitted to another Special Agent that she had perjured herself while testifying at a suppression hearing in a criminal prosecution of a soda-dispensing company for violations of the federal environmental laws. See Bialek Decl., Ex D (Report of Investigation), Synopsis at 1. Shortly thereafter, the Office of the Inspector General of the Environmental Protection Agency (EPA/OIG) opened a criminal investigation into the allegations. See id.

The EPA/OIG interviewed several government employees in the course of the investigation.[1] The Special Agent to whom plaintiff allegedly admitted that she perjured herself told the investigators that she did not recall plaintiff using those specific words. The Special Agent explained that plaintiff said only that she could no longer testify in court because of problems she had in the course of the soda-dispensing case, a fact that the Special Agent had assumed meant that she had perjured herself in those proceedings. See Bialek Decl., Ex D (Report of Investigation), Ex. 4 at 1-2. The Special Agent informed the investigators that she did not like plaintiff, and that the other agents in the office disliked her as well. The investigation report notes that the Special Agent's body language and verbal answers were not consistent, and that the Special Agent declined to provide a written statement of the interview. See id. at 4-5.

The director of the Criminal Investigation Division told the investigators that plaintiff's testimony during the soda-dispensing case was weak and inconsistent, but that he could not say that she committed perjury. See Bialek Decl., Ex. D (Report of Investigation), Ex. 1 at 1. He

---

[1] The facts in this section relating to the investigation are drawn from the reports of the investigation in the record.

noted that the other employees in the office were not happy about a promotion that plaintiff had received in the aftermath of the testimony. See id. at 2. An attorney in the Environmental Crimes Section of the Department of Justice who worked on the soda-dispensing case told investigators that there were lots of rumors regarding plaintiff, and that although plaintiff was a poor witness who could not answer fundamental questions about the case on the stand, he did not think she perjured herself. See id. at 1-3. He also conveyed to investigators that other agents in plaintiff's office disliked her because she was African-American. See id. at 2.

The investigators interviewed plaintiff on February 8, 2001, and she signed a sworn statement at the end of her interview that she never told anyone that she could not testify in court, or that she perjured herself at the suppression hearing in the soda-dispensing case. The investigators completed and closed the investigation effective May 18, 2001. The report of the investigation indicates that the investigators found the alleged misconduct "unfounded." Bialek Decl., Ex. D (Report of Investigation) at 1 (Closing Status Report); see also id. at 4 (Letter from Emmett D. Dashiell, Jr. to Letterio A. D'Amico), at 1 ("Our investigation did not corroborate the alleged misconduct described above and as a result was not referred for criminal, civil, or administrative action.").

On February 4, 2002, William T. Irelan -- counsel for plaintiff -- wrote a letter to the EPA requesting a copy of the report completed by the EPA/OIG regarding its investigation of plaintiff, or in the event no such report has been prepared or completed, a copy of the entire OIG file compiled in the matter. Irelan explains in the first line of the letter that he is seeking the documents on behalf of plaintiff:

> I represent Paula D. Brown, Special Agent in Charge, GS1811-14, currently

stationed at the Office of Criminal Enforcement, Forensics and Training Center in Washington, D.C.  Ms. Brown has hired me to obtain certain documentation pursuant to the Freedom of Information Act.

Bialek Decl., Ex. A at 1.  The second page of the letter contains a signed and dated authorization from Paula D. Brown stating: "Paula D. Brown hereby authorizes William T. Irelan as her attorney-in-fact to obtain the above documents on her behalf."  Id. at 2.

By letter dated May 24, 2002, the EPA notified Irelan that the EPA/OIG had located two Reports of Investigations that were responsive to the request.[2]  The EPA gave Irelan copies of the reports as well as the other materials in the investigative files.  The EPA advised Irelan that it had withheld material from the files pursuant to Exemption 5, Exemption 6, and Exemption 7(C) of FOIA, and that Irelan could appeal this partial denial of the request if he wished.  The letter also informed Irelan that the EPA had referred documents originating with the DOJ to that agency for review, and that the DOJ would contact him directly with its response.  See Bialek Decl., Ex. B.

On July 30, 2002, Irelan filed an appeal with the EPA.  By letter dated June 5, 2003, the EPA informed Irelan that it had reversed the initial partial denial with regard to all material previously withheld under Exemption 5, and certain materials withheld under Exemption 7(C),[3] but upheld the decision to withhold the names of investigating agents and the names and other

---

[2] The second Report of Investigation involved a separate allegation of misconduct not relevant to the issues in this case.

[3] The EPA explained that although it was of the view that the EPA/OIG reports fall within the ambit of Exemption 6, it did not "need to separately analyze the OIG withholdings under Exemption 6 because OIG also based the withholdings on Exemption 7(C), which establishes a lesser burden on the agency to justify withholding as long as the records were compiled for law enforcement purposes."  Id. at 3.  Following this letter, the EPA and the DOJ have relied on Exemption 7(C) rather than Exemption 6 to justify the redaction of identifying information of witnesses and agents from plaintiff's records.

identifying information of witnesses under Exemptions 6 and 7(C).

On May 31, 2002, the DOJ notified Ireland that one of the documents referred to it from the EPA was non-responsive to the FOIA request because it did not discuss plaintiff, and the other document would be withheld under Exemption 5. By letter dated July 30, 2002, Ireland appealed the determination. On December 12, 2002, the DOJ notified Ireland that it had upheld the withholding of the document. The DOJ has since released the document, but has redacted information that would reveal the identity of employee witnesses or informants from the document pursuant to Exemption 7(C).

Plaintiff commenced this action on June 3, 2004, challenging the decisions of the EPA and the DOJ to redact from the investigative materials the names and other identifying information of witnesses and investigating agents. The parties have filed cross-dispositive motions, and the briefing of those motions is complete. Plaintiff explains in the papers accompanying her motion that she has withdrawn any challenge to the agencies' redaction of identifying information for EPA/OIG investigators or private citizen-witnesses, and now seeks only information withheld by defendants that relates to government employee-witnesses and informants. Defendants continue to maintain that this information was properly withheld under Exemption 7(C), and provide declarations from Mark Bialek, the Counsel to the Inspector General of the EPA, and Eileen O'Brien, an attorney advisor with the Law and Policy Section of the Environment and Natural Resources Division of the Department of Justice, in support of their decision to withhold this information.

## **STANDARD OF REVIEW**

The Court may grant a motion for summary judgment if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ANALYSIS

**I.    Standing**

Defendants argue at the outset that plaintiff lacks standing to pursue her FOIA claim because the request for the documents from the EPA was not made by the plaintiff, but instead by her counsel, William T. Irelan. Defendants are correct that a FOIA request to an agency must "be

made in writing by the person making the request." 31 C.F.R. § 1.5(c)(1).  A person "whose name does not appear on a request for records has not made a formal request for documents within the meaning of the statute.  Such a person, regardless of his or her personal interest in disclosure of the requested documents, has no right to receive either the documents . . . or notice of an agency decision to withhold documents."  McDonnell v. United States, 4 F.3d 1227, 1236-37 (3d Cir. 1993).  Consistent with this law, several courts have dismissed FOIA claims for lack of standing where plaintiff's counsel submitted a request for documents to an agency without including the plaintiff's name on the request or stating that the request was being filed on behalf of the plaintiff.  Three Forks Ranch Corp. v. Bureau of Land Mgmt., 358 F. Supp. 2d 1, 2-3 (D.D.C. 2005); Maxxam, Inc. v. FDIC, No. 98-0989, 1999 WL 33912624, at *5 (D.D.C. Jan. 29, 1999); Unigard Ins. Co. v. Dep't of the Treasury, 997 F. Supp. 1339, 1343 (S.D. Cal. 1997).

That is not remotely the situation here.  Plaintiff's counsel stated in the first line of his request to the EPA requesting the documents that "I represent Paula D. Brown," and that "Ms. Brown has hired me to obtain certain documentation pursuant to [FOIA]."  Ex. A at 1.  The second page of the request contains a signed and dated authorization from plaintiff stating that she "hereby authorizes William T. Irelan as her attorney-in-fact to obtain the above documents on her behalf."  Ex. A at 2.  The other correspondence in the record confirms that it was the understanding of all of the parties that Irelan was making a request for his client rather than on his own behalf.[4]

---

[4] The EPA recognized in its partial denial of the FOIA request that Irelan had made his request "on behalf of your client, Ms. Paula D. Brown."  Decl. of Mark Bialek, Ex. B at 1.  Irelan then appealed the partial denial in a letter to the EPA, stating again that he was writing "on behalf of Special Agent Paula D. Brown," and that "Ms. Brown requests the disclosure of all the documentation the Agency has to date withheld from her FOIA request."  Id., Ex. C at 1, 3.

No court has ever indicated that a plaintiff lacks standing to bring a FOIA claim in these circumstances.  See Three Forks Ranch Corp., 358 F. Supp. 2d at 2-3 (standing exists when an attorney "adequately identif[ies] that he is making the FOIA request for his client"); Unigard, 997 F. Supp. at 1343 ("Nowhere in the letter of February 26, 1997 did Unigard's counsel indicate that he represents Unigard or that he sought the information on Unigard's behalf. . . .  It was [counsel's] responsibility to state that he made the request as Unigard's counsel.").  The principal purpose of the standing doctrine is to ensure that a party has suffered an injury that gives her a "personal and individual" stake in the case.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992).  There is no sensible argument for reading this requirement to strip citizens entirely of the ability to seek relief from government agencies through the representation of counsel.  Accordingly, the defendants' motion to dismiss the plaintiff's FOIA claim for lack of standing is denied.

## II.     Withholding of Documents

Turning to the merits of the case, plaintiff challenges the defendant agencies' decision to redact from her investigative files information relating to the identity of employee-witnesses and informants pursuant to Exemption 7(C).  That Exemption permits withholding of:

---

Likewise, when the EPA referred certain documents to the DOJ, and the DOJ withheld two documents from disclosure, Irelan appealed in a letter stating that he writes "on behalf of Special Agent Paula D. Brown to appeal the Department's denial of her FOIA request."  Decl. of Eileen O'Brien, Ex. D at 1.  The DOJ responded with a letter addressed to "Ms. Paula D. Brown" at the address of her counsel and began the letter with:  "This is to advise you that your administrative appeal from the action of the Environment and Natural Resources Division on your request for information from the files of the Department of Justice was received by this Office on July 31, 2002."  Id., Ex. E at 1.  Later, in denying the appeal, the DOJ wrote to counsel for plaintiff, stating:  "You appealed on behalf of your client, Paula D. Brown . . . on her request for access to records concerning her.  After carefully considering your client's appeal, I have decided to affirm the ENRD's action on her request."  Id., Ex. F. at 1.

>   records or information compiled for law enforcement purposes, . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7)(C).  Plaintiff does not dispute that the material she is requesting consists of records or information compiled for law enforcement purposes within the meaning of Exemption 7(C).  She contends, however, that although the redacted information may constitute an unwarranted invasion of personal privacy, that concern is outweighed by the public interest in disclosure.  Pl. Mem. at 13-14.

To determine whether material is protected by Exemption 7(C), "a court must balance the public interest in disclosure against the interest Congress intended the Exemption to protect." Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776 (1989).  Before a court "decides whether information falls within Exemption 7(C), it must first identify both the privacy interests that are at stake and the public interest in disclosure."  Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).  "Having identified the competing interests in a case," the Court must then "balance them."  Stern v. FBI, 737 F.2d 84, 91-92 (D.C. Cir. 1984).

The privacy interest implicated in this case is substantial.  "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990).  That interest "extends to persons who are not the subjects of the investigation but who may nonetheless have their privacy invaded by having their identities and information about them revealed in connection with the investigation."  Computer Prof'ls for Social Responsibility, 72 F.3d at 904.  Accordingly,

Exemption 7(C) "affords broad privacy rights" to witnesses and informants in criminal investigations. Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); see Piper v. U.S. Dep't of Justice, No. 98-1161, 2005 WL 1384337, at *4 (D.D.C.) ("[I]ndividuals who provide information to the law enforcement authorities . . . have a privacy interest and their identities have traditionally been protected from disclosure by Exemption 7(C).").[5]

Plaintiff argues that this body of law is inapposite because this case involves the identity of federal employees. Pl. Mem. at 15-16. But there is simply no authority for the proposition that an individual forfeits her right to privacy entirely when she chooses to work for the government. Although government employment may lead to a reduction in one's right to privacy in certain respects, Stern v. FBI, 737 F.2d 84, 93 (D.C. Cir. 1984), courts consistently hold that suspects and witnesses retain a substantial interest in the protection of their identities in government documents notwithstanding the fact that they work for the federal government. See, e.g., McCutchen v. U.S. Dep't of Health and Human Servs., 30 F.3d 183, 186 (D.C. Cir. 1994) (collecting cases for proposition that "[c]ourts have declined to reveal the names" of "government employees who have been the targets of investigations"); Croskey v. United States Office of

---

[5] See also Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 894 (D.C. Cir. 1995) (Exemption 7(C) privacy interest "extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation."); McDonnell v. United States, 4 F.3d 1227, 1255 (3d Cir. 1993) ("[I]nterviewees and witnesses also have a substantial privacy interest because disclosure may result in embarrassment and harassment."); L & C Marine Transport v. United States, 740 F.2d 919, 922-23 (11th Cir. 1984) ("[E]mployee-witnesses . . . have a substantial privacy interest . . . as disclosure would lead to the type of harm, embarrassment and possible retaliation that 7(C) was created to prevent.").

Special Counsel, 9 F. Supp. 2d 8, 12 (D.D.C. 1998) (holding that the government employee witnesses "whose names were redacted from the ROI [Report of Investigation] have a privacy interest in keeping their names confidential").

Plaintiff also contends that whatever privacy interests a government employee might possess in a normal case, the interest in this particular case is slight, because the EPA/OIG both employed these individuals and undertook the investigation of their allegations of perjury. Therefore, plaintiff reasons, the "government already knows who these employee-witnesses are," and disclosure of the information would not increase the likelihood of retaliation from their employer. Pl. Mem. at 17. Even if this is true,[6] the risks that attend the disclosure of an employee-witness's name are not nearly so limited. One court recently described the privacy interest of witnesses whose names were redacted from an investigation into the plaintiff's termination from government employment as significant for reasons entirely aside from the risk of retaliation, including "because disclosure could subject them to unwarranted questioning concerning the OSC investigation, subpoenas issued by private litigants in civil suits, and harassment from co-workers or other individuals." Croskey, 9 F. Supp. 2d at 12. The employees in this case enjoy a similar, broad right to be protected from the mischief -- within the workplace and without -- that could follow from the public disclosure of their identity as witnesses in a criminal investigation.

---

[6] Although one would expect that certain officials in the EPA/OIG who were involved in the investigation would know the identities of the employees, other officials in the EPA/OIG might not. As important, other individuals in the government for whom the employees might one day work (or wish to work) may not look kindly on their participation in the investigation. Public disclosure of their identities would increase the risk of retaliation at the hands of these individuals.

Even if the privacy interest of the employees were modest, however, that interest would still outweigh the public interest in disclosure, which in this case is non-existent.  See Davis, 968 F.2d at 1281 ("But even if a particular privacy interest is minor, nondisclosure remains justified where, as here, the public interest in disclosure is virtually nonexistent."); Fitzgibbons, 911 F.2d at 768 ("We need not linger over the balance; something . . . outweighs nothing every time." (quotation omitted)).  A plaintiff seeking information encompassed by Exemption 7(C) bears the burden of proving that "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and that the information is likely to advance that interest."  National Archives and Records Admin. v. Favish, 541 U.S. 157, 158-59 (2004).  The lone public interest that is relevant "for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  Davis v. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quotation omitted); see Piper, 2005 WL 1384337, at *4 ("[T]he public interest is only that interest central to FOIA:  shedding light on an agency's performance of its statutory duties.").

Plaintiff contends that disclosure of the redacted information would serve the public interest in "knowing how or on what basis a government agency initiates and conducts criminal investigations, in particular a criminal investigation of one of its employees." Pl. Mem. at 19.  However, the D.C. Circuit has time and again rejected the suggestion that the disclosure of names in government investigative files can somehow provide insight into the workings of the government.  See Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 666 (D.C. Cir. 2003) ("Schrecker asserts that disclosure of this information would shed light on the workings of government by permitting closer public scrutiny of the Eisler and Jencks investigations.  But we

-12-

have rejected similar claims in the past because the type of information sought is simply not very probative of an agency's behavior or performance." (quotation omitted)); Fitzgibbons, 911 F.2d at 768 ("[T]here is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'").[7]

Plaintiff argues that a different result is warranted here because, she says, the EPA/OIG was infected from the outset with wrongdoing. She asserts that the EPA/OIG was negligent in even commencing a criminal investigation based on information that "on its face [was] gossip and speculation," and that this "level of shoddy investigative policy and practice is patently of concern to the general public." Pl. Mem. at 19. The Supreme Court recently described the inquiry a court should undertake when presented with a claim that the public interest in uncovering government misconduct overcomes the right to privacy in Exemption 7(C):

> We hold that, where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

Favish, 541 U.S. at 174.

In this case, plaintiff can provide no evidence of agency wrongdoing. The record demonstrates that the EPA/OIG was presented with allegations of perjury, thoroughly

---

[7] See Mays v. Drug Enforcement Admin., 234 F.3d 1324, 1327 (D.C. Cir. 2000) ("Absent exceptional circumstances, the balance categorically favors withholding the names and addresses of third parties as 'the type of information sought is simply not very probative of an agency's behavior or performance.'"); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C. Cir. 1991) (rejecting argument that "access to the names and addresses of potential witnesses or litigants in SEC stock manipulation investigations would provide SafeCard and the public with insight into the SEC's conduct with respect to SafeCard in particular and short selling practices in general").

investigated those allegations, and concluded that they were unfounded. There is nothing in the record to support plaintiff's assertion that the EPA/OIG should have known before they even undertook the investigation that the allegations were unfounded. See McCutchen, 30 F.3d at 190 ("[E]ven if learning the identities of the complainants would enable scientists to check the thoroughness of OSI's work, we will not force the agency to turn over the names of the complainants simply because someone has accused it of wrongdoing."). Allegations of government misconduct, the Supreme Court advises, "are easy to allege and hard to disprove," and "so courts must insist on a meaningful evidentiary showing" before finding a public interest on this ground that is sufficient to counter a privacy interest in the documents under Exemption 7(C). Favish, 541 U.S. at 175. Plaintiff has come forward with no such showing here.[8]

     Plaintiff argues in the alternative that the employee witnesses in this case are responsible for setting into motion a criminal investigation for reasons of personal animus and even possibly racism, and that the public has an interest in "identifying federal government employees who corrupt the investigative system and exploit it for their own ends." Pl. Mem. at 21. However, acts that one government employee might take against another government employee out of personal malice -- while regrettable, to be sure -- are not the sort of evil that FOIA was designed to expose. Even supposing that the witnesses in this case chose to report allegations of perjury to their supervisor due to their dislike of the plaintiff, disclosing the identity of the witnesses would

---

[8] Moreover, plaintiff once again cannot explain how the identity of the witnesses' names would contribute any information on the plaintiffs' culpability in commencing the prosecution. See Piper, 2005 WL 1384337, at *5 ("Plaintiff argues that there is a public interest in simply knowing that the DOJ handles its investigations properly. But this interest is served whether or not the names and identifying information of third parties are redacted. For example, the public does not need to know the names of people the FBI should not have investigated or investigated less to know that the FBI wasted its time or unwisely spent resources.").

not shed any meaningful light on the operation of the defendant agencies; it would, at most, shed light on the relationship of individuals who happen to work at the defendant agencies.  See Beck v. Dep't of Justice, 997 F.2d 1489, 1493 (D.C. Cir. 1993) ("The identity of one or two individual relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct," and therefore "there is no public interest in [the] release" of that information); Mack v. Dep't of Navy,  259 F. Supp. 2d 99, 108 (D.D.C. 2003) ("Even if the plaintiff were able to demonstrate wrongdoing on the part of NCIS officials, single acts of misconduct do not necessarily reveal 'what [the] government is up to.'").

      The Court cannot help but suspect that many of these arguments are an effort to put an objective gloss on the actual reason that plaintiff desires this information:  not because she believes it will contribute to an understanding of the governmental investigative process, but because she feels wronged, and wants to know who is responsible.  This impulse is understandable.  However, FOIA is not an avenue for obtaining documents for personal use, or a substitute for civil discovery.  See Oguaju, 288 F.3d at 450; Mack, 259 F. Supp. 2d at 108-09.  There are important principles at stake in the general rule that employees may come forward to law enforcement officials with allegations of government wrongdoing and not fear that their identities will be exposed through FOIA.  See McCutchen, 30 F.3d at 189 ("The complainants have a strong privacy interest in remaining anonymous because as 'whistle-blowers,' they might face retaliation if their identifies were revealed.").  These principles are too fundamental, and too delicate, to be cast aside in a particular case based on the hint of personal animus or the fact that the allegations were deemed ultimately to be unfounded.

**CONCLUSION**

The privacy interests in this case far outweigh the public interest in disclosure. Hence, the Court will not order the defendant agencies to reveal information relating to the identity of the government employee-witnesses under Exemption 7(C). Defendants' motion to dismiss or, in the alternative, for summary judgment is GRANTED, and plaintiff's cross-motion for summary judgment is DENIED. A separate order will issue.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated:     August 10, 2005

Copies to:

William T. Irelan
FREIDEMAN, IRELAN, WARD & LAMBERTON, P.C.
1000 Potomac Street, NW
The Flour Mill-Suite 400
Washington, DC 20007
(202) 625-1800
Fax: (202) 625-1616
Email: wtirelan@vais.net
  *Counsel for plaintiff*

Peter S. Smith
UNITED STATES ATTORNEY'S OFFICE
555 4th Street, NW
Washington, DC 20530
(202) 307-0372
Fax: (202) 514-8780
Email: peter.smith@usdoj.gov
  *Counsel for defendant*